HURLEY, Respondent, v. MEDIA TWP. SCHOOL DISTRICT, JERAULD CO., Appellant.

(257 N. W. 132.)

(File No. 7674. Opinion filed November 8, 1934.)

*Miller & Shandorf,* of Mitchell, for Appellant.
*J. H. Lammers,* of Madison, for Respondent.

WARREN, J.    Media township school district, the defendant in this action, contains four schools.    At the annual election, the electors by a vote of 49 to 6 voted to close the Schubert School for the school year 1933-34 and to allocate its six pupils to the other three schools in the district.    In July, 1933, the school board in regular session went on record as closing said school, and on July 14, 1933, a petition signed by four of the patrons of the Schubert School was filed with the county superintendent of schools, requesting that said school remain open, and also enumerated their reasons for wanting the school kept open.    A hearing was had before said superintendent on the petition, and all the school board members of Media township and all the patrons of the school were present.    The county superintendent of schools reversed the action of the school board in closing the school on July 24, 1933, and notice of said decision was mailed to each board member.    No appeal was taken from said decision.    The school board did not recognize the authority claimed by the county superintendent in the premises and did not hire a teacher for the school, whereupon, on October 1, 1933, the state superintendent of public instruction, treating the case as one where a school board has failed or neglected to engage a duly certified teacher for a school and purporting to act under section 231, c. 138, Laws 1931, instructed the county superintendent of Jerauld county to contract with a qualified teacher for the Schubert School.    Thereupon, on October 4, 1933, said county superintendent did so contract with Verna Hurley, the plaintiff, who was admittedly a qualified teacher, to conduct said school for a term of eight school months commencing October 4, 1933, at the rate of $40 per month, and in December, 1933, Verna Hurley instituted the present action against the school district to recover the sum of $80 as her salary for October and November pursuant to the terms of the contract thus awarded her by the county superintendent.    The court having entered a judgment in favor of the plaintiff, the defendant has appealed.

██ ██    Section 261 c. 138, Laws 1931, reads as follows: "A school may be discontinued by the school board provided proper arrangements are made for the schooling at public schools of the pupils who would ordinarily be in attendance at the school were it not discontinued."

Section 262 of the same act provides for an appeal to the

county superintendent of schools "whenever any school in a common school district is discontinued under the preceding section. * * *" (Incidentally it may be noted that section 262 provides that the decision of the county superintendent in the matter shall be final, which seems not entirely consistent with the provisions of section 81 of the same law.)

It seems quite clear from the language of section 262 that appeals thereunder are limited to the cases where the discontinuance is "under the preceding section." It seems quite plain also that section 261 refers to the discontinuance of a school "by a school board"; that is, where the discontinuance is of the board's volition and where, in truth and in fact, the board is exercising its powers, judgment, and discretion as a board.

From the record before us, it appears that arrangements had been made to take care of the children who would have attended the school if other arrangements had not been made.

Appellant contends that section 124, c. 138, Laws 1931, permits the electors to take such action, and that the school board was bound to take affirmative action to carry out the instructions of the electors. An examination of said section 124, c. 138, Laws 1931, clearly indicates that the electors shall have the authority to instruct the board in matters pertaining to the management of the schools for the coming year and may instruct the board pertaining to the branches to be taught, time at which the schools of the district shall be held, amount of tax levy, the repair of buildings and fixtures, and other duties as specifically expressed therein, and it further provides: " * * * And upon any other subject pertaining to the schools; and it shall be the duty of the district board to carry into execution as speedily as possible all such instructions that have received a majority vote of the electors of the district present at the meeting." Clearly the closing of a school is embraced within the statute and may be considered as one of the elements and matters upon which the electors may instruct the board under the language, " * * * and upon any other subject pertaining to the schools."

The Legislature undoubtedly used the language, "at the annual common school district election the electors shall have the authority to instruct the board in matters pertaining to the management of

the schools for the coming year," and "upon any other subject pertaining to the schools," to give the electors the broadest possible powers. It is difficult to conceive of any stronger language to accomplish such a purpose than that used by the Legislature. Respondent argues that the statute does not cover specifically the closing of a school, and that force and effect must be given to another portion of the section which provides: "* * * Provided further that nothing contained herein shall prevent the district board from exercising sound discretion as to all matters pertaining to its duties not expressly provided for by law. * * *" We are unable to place such a construction upon the statute before us. The statute giving the electors authority to instruct the board seems to us mandatory. The electors are given the authority to instruct the board upon certain matters, and the word "instruct" as used in this statute is not used in the sense that the action of the electors shall be advisory to the board only. Instruct as used in this statute cannot be construed to mean advise; but must be construed to mean, as defined in the Century Dictionary, "to direct or command, furnish with orders or directions"; or, as defined by the Standard Dictionary, "to furnish with specific orders, give orders or directions to; command; as to instruct a servant or agent." We believe that the Legislature intended to and did use the word "instruct" in its mandatory form, and that they did not mean to have the electors merely advise the board. The present situation is comparable to the construction placed upon the words "instruct" and "advise" by the Supreme Court of Idaho in State v. Downing, 23 Idaho 540, 130 P. 461, 462, where they said: "The Legislature in using the word 'advise' in said section, evidently intended to give it a different meaning from that which is generally given to the word 'instruct.' The generally accepted meaning of the word 'instruct,' when applied to courts, means a direction that is to be obeyed; while, under the meaning given to the word 'advise,' it is left optional with the person advised as to whether he will act on such advice or not."

See, also, Waldroop v. Waldroop et al, 179 N. C. 674, 103 S. E. 381, 382, in which the court construed the word "instruct" as being imperative as used in a last will and testament by the testator in which he used the words, "I instruct her hereby to give each of them," etc., and not merely directory or advisory.

■ The electors having the authority to instruct the board upon any other subject pertaining to the schools and having availed themselves of the opportunity by giving such instructions, the district board was precluded from exercising its sound discretion thereafter. To give the construction to the statute suggested by the respondent, it would necessarily follow that the electors would be deprived of the power and authority which they had been vested with in the forepart of the section. It would therefore seem foolish to strip the electors of the powers conferred upon them by placing emphasis upon the provision of the statute giving the district board the power to exercise sound discretion as to all matters pertaining to its duties not expressly provided for. We do not believe that the Legislature had in mind, when adding said clause, to completely destroy the statute conferring the broad powers upon the electors by the term "and upon any other subject pertaining to schools." It seems to us that the sound discretion upon all matters pertaining to the duties of the district board expressed by the statute may be given force and effect by stating that the board shall exercise all duties which the electors have not specifically instructed and directed to be done in the meeting held by the electors for that purpose.

■ After the electors had instructed the board relative to closing the Schubert School by a vote of 49 in favor of closing to 6 against closing, the district board by its action at its regular annual board meeting held July 11, 1933, put into effect the mandate of the electors declaring the Schubert School closed, and distributed the children that otherwise would have attended the Schubert School among the other schools of the district. It seems quite clear that the Legislature in its control and power over our schools decided to place the authority to discontinue schools first in the majority of electors within the district and second with the school board.

There can be no question as to the power of the Legislature under our Constitution to invest the electors and the school board with such power, for the state has power, for its own protection, to require children to be educated.

■ The respondent under the facts contained in the record before us did not receive such a contract of employment as is con-

templated by statute, and would therefore not be entitled to a recovery against the appellant for the services rendered.

The judgment and order appealed from are reversed and the cause remanded, with directions to make conclusions and enter judgment for defendants upon the present findings.

POLLEY, CAMPBELL, and RUDOLPH, JJ., concur.

ROBERTS, P. J. (dissenting). Desirable as may appear to be the effect given the statutory provisions considered, I am convinced that we are making law and not applying it.

The electorate and the district school board have such powers only as are delegated and such duties as are imposed by statute. Section 124, c. 138, Laws of 1931, confers upon the electorate of a common school district the authority to instruct the board pertaining to the branches to be taught in addition to those expressly required by statute, the time at which schools of the district shall be held, the repair of buildings and fixtures, erection of buildings, and the purchase and sale of land and other property. This enumeration of specific matters upon which instructions may be given is followed by a delegation of authority to instruct "upon any other subject pertaining to the schools." This delegation of authority is then limited and qualified by the proviso: "Provided further that nothing contained herein shall prevent the district board from exercising sound discretion as to all matters pertaining to its duties not expressly provided for by law."

It is a cardinal rule of construction of statutes that effect must be given, if possible, to the whole statute and every part thereof. No part is to be treated as immaterial or superfluous if it may be reasonably avoided. Construing the proviso to mean that the school board may exercise its sound discretion within the limits of the law concerning matters upon which the electors have not instructed is to render a complete proviso surplusage and in effect amend the statute. No one would question the right of a school board to exercise such authority in the absence of such provision. We find the proviso in question or similar provisions existing as a part of the school statutes of this state since the enactment of chapter 78, Laws of 1893. Section 1 of chapter 5 of this act provided in part as follows: "The district school board shall have the general charge, direction and management of the school or

schools of the district, and the care, custody and control of all the property belonging to it, subject to the provisions of this act. * * * such meetings shall have power to determine what branches in addition to those prescribed in Section thirteen (13), Chapter eight (8) of this act shall be taught in their respective schools, and at what time within the school year such school shall be held, and shall instruct the directors as to choice of teacher or teachers, and to direct such repairs as they may deem necessary in their school house fixtures and outbuildings, and may petition the district school board for removal of the school house to a more convenient location, for the erection of a new one or the sale of an old one, and the lands belonging thereto; and upon any other subject connected therewith. * * * And it shall be the duty of the district board to carry into execution all such instructions pertaining to the branches to be taught, the time at which school shall be held, and the teacher to be employed. * * * Provided, further, That nothing contained herein shall prevent the district board from exercising a sound discretion as to the propriety or expediency of making repairs, removing, erecting or selling school houses, and the land pertaining thereto."

The corresponding section of the revision of the school laws of 1897 (chapter 57, Laws of 1897) read in part as follows: " * * * Such meetings shall have power to determine what branches in addition to those prescribed in Section thirteen (13) Chapter eight (8) of this act, shall be taught in their respective schools and at what time within the school year such school shall be held, and to direct such repairs as they may deem necessary in their school house, fixtures and outbuildings, and may petition the district school board for the removal of the school house to a more convenient location, for the erection of a new one or the sale of an old one and the lands belonging thereto; and upon any other subject connected therewith. * * * And it shall be the duty of the district board to carry into execution all such instructions pertaining to the branches to be taught and the time at which school shall be held; * * * Provided further, that nothing contained herein shall prevent the district board from exercising a sound discretion as to all matters pertaining to the duties of their office not specifically provided for in this act." Chapter 5, § 1.

Under the provisions of the statute enacted in 1893, the electors of a school district were given authority to instruct the board upon specific subjects pertaining to the school and "upon any other subject connected therewith." It was expressly made the duty of the board "to carry into execution all such instructions pertaining to the branches to be taught, the time at which school shall be held, and the teacher to be employed." The delegated authority to instruct upon other enumerated subjects was expressly limited and qualified by the proviso at the end of the section that "nothing contained herein shall prevent the district board from exercising a sound discretion as to the propriety or expediency of making repairs, removing, erecting or selling school houses, and the land pertaining thereto." It is apparent under this statute that instructions upon the subjects mentioned in the proviso were advisory merely and not binding upon the district board. In the statute of 1897 are found the same enumeration of subjects upon which the electors may instruct the board with the exception of the employment of a teacher. This statute also made it mandatory upon the board to give effect to the instructions of the electors with respect to branches to be taught and the time at which the schools were to be held. The proviso was again included. It did not, however, enumerate the subjects upon which the instructions of the electors were merely advisory, but provided that "nothing contained herein shall prevent the district board from exercising a sound discretion as to all matters pertaining to the duties of their office not specifically provided for in this act."

The revision of the school laws in 1901 (chapter 113, Laws of 1901) contained the following provisions: "At this meeting the electors may instruct the board, and it shall be their duty to carry into execution all such instructions, pertaining to the branches to be taught in addition to those prescribed in Section fourteen (14), Chapter eight (8) of this act; the time at which the schools of the district shall be held; the amount of tax levy; to direct the repair of the school houses, fixtures and outbuildings, and for the removal of the school house to a more convenient location, for the erection of a new one or the sale of an old one and the lands belonging thereto, and upon any other subject pertaining to the schools. * * * And it shall be the duty of the district board to carry into execution all such instructions upon a majority vote of the electors of their

district. * * * Provided, further, that nothing contained herein shall prevent the district board from exercising a sound discretion as to all matters pertaining to the duties of their office not specifically provided for in this act."   Section 3, c. 5.

In this act of 1901 electors were authorized to instruct upon all the subjects enumerated in the preceding act, but the duty was enjoined upon the board to carry into execution all such instructions.   The provisions of the act of 1901 pertaining to instructions by electors including the proviso have been retained without substantial change.   Section 81, c. 135, Laws of 1907; section 7456, Rev. Code 1919; chapter 176, Laws of 1919; section 124, c. 138, Laws of 1931.   The proviso should be construed in the light of prior statutes.   It had reference, not to the exercise of discretion where an instruction had not been given, but to the statutory authority of the electorate to give a mandatory instruction.   It was intended that while in some instances the electors had a controlling power, yet in other they acted in an advisory capacity.   The duties of the board expressly mentioned in this statute are specific.   When an instruction does not pertain to any one of such specific duties, the instruction, in my opinion, is merely advisory.   If the Legislature had intended to make all instructions binding upon the board, it would have accomplished such purpose by merely providing that "at the annual district meeting the electors shall have the authority to instruct the board and it shall be the duty of the board to carry into execution all such instructions pertaining to the management of the schools for the coming year."

The electors of Media township were not expressly authorized to instruct the board to discontinue a school, and I therefore dissent from the view that the instruction was mandatory.